

No. 15-10684

---

### United States Court of Appeals
### For the Fifth Circuit

---

Lisa Biron,
            Plaintiff-Appellant

**v.**

Jody Upton, Warden, FMC-Carswell, et al.,
            Defendant-Appellees

---

On Appeal from the United States District Court
For the Northern District of Texas
District Court No. 4:15-CV-205-O

---

Brief For Appellant

---

Lisa Biron, Esquire
Reg. # 12775-049
FMC Carswell
P.O. Box 27137
Fort Worth, TX 76127

# Table of Contents

Table of Authorities ........................................ ii

Questions Presented ........................................ 1

Statement of Jurisdiction .................................. 2

Statement of the Case ...................................... 2

Summary of the Argument .................................... 6

Standard of Review ......................................... 7

Argument ................................................... 7

    I.   Ms. Biron has stated a First Amendment
        claim ............................................... 8

   II.   Ms. Biron has a Fifth Amendment Due
        Process right against government
        interference with her familial re-
        lationship between her and her daughter .......... 11

       A.  Sufficient Harm Was Alleged ................... 11

       B.  Heck And Non-Exhaustion Do Not
          Bar The Claims ............................... 12

  III.   Conclusion ........................................ 14

Certifications ............................................. 14

Order and Judgment ......................................... 15

# Table of Authorities

Ashcroft v. Iqbal,
566 U.S. 662 (2009) ................................ 7

Bivens v. Six Unknown Agents,
403 U.S. 388 ................................ 2

Bradley v. Puckette,
157 F.3d 1022 (5th Cir. 1998) ................ 7

Brewer v. Wilkinson,
3 F.3d 816 (5th Cir. 1993) ............... 8

Brown v. Sudduth,
255 Fed. App'x 803 (5th Cir. 2007) ................ 12

Cinel v. Connick,
15 F.3d 1338 (5th Cir. 1995) ............... 8, 10

Clarke v. Stalder,
154 F.3d 186 (5th Cir. 1998) .............. 12, 13

Davis v. Bayless,
70 F.3d 367 (5th Cir. 1995) ............... 8, 10

Dorsey v. Portfolio Equities, Inc.,
540 F.3d 333 (5th Cir. 2008) .............. 7

Heck v. Humphrey,
512 U.S. 477 (1994) .................... 12, 13

Johnson v. Brown,
581 Fed. App'x 777 (11th Cir. 2014) ............ 9

Preiser v. Rodriguez,
411 U.S. 475 (1973) .................... 12

Quilloin v. Walcott,
434 U.S. 246 (1978) .................... 11

Riker v. Lemmon,
798 F.3d 546 (7th Cir. 2015) ............ 8

Rogers v. Boatright,
709 F.3d 403 (5th Cir. 2013) ............ 7

Samford v. Dretke,
562 F.3d 674 (5th Cir. 2009) ............ 7

Scanlon v. Tex. A & M Univ.,
    343 F.3d 533 (5th Cir. 2003) .......................... 8, 10

Troxel v. Granville,
    530 U.S. 57 (2000) ................................... 11

Turner v. Safely,
    482 U.S. 78 (1987) ................................... 8, 11

Washington v. Glucksberg,
    521 U.S. 702 (1997) .................................. 11

Williams v. Kaufman County,
    352 F.3d 994 (5th Cir. 2003) ......................... 12

**Statutes**

28 U.S.C. § 1291 ............................................. 2

28 U.S.C. § 1331 ............................................. 2

28 U.S.C. § 1915 ............................................ 2, 7

28 U.S.C. § 1915A ........................................... 2, 7

**Other**

Fed. R. Civ. P. 12(b)(6) ..................................... 7

## Questions Presented

I. **First Amendment Claims**
Did the District Court err when, on screening under the Prison
Litigation Reform Act ("PLRA"), and without even serving the
Defendants, it considered and relied on matters outside of the
pleadings (matters from her habeas action) — matters unproven,
and in fact false — such as that there exists a specific bar
to contact, or that R.B., Michael Biron, or Michael Bonczar ever
requested Ms. Biron be prevented from contacting them, to find
that Defendants' actions barring contact were reasonably relat-
ed to a legitimate penological interest?

II. **Fifth Amendment Claims**
Did the District Court err in dismissing Ms. Biron's Fifth Amend-
ment substantive and procedural due process claims when it mis-
construed her claims as merely challenges to Disciplinary Hearing
Officer ("DHO") and Unit Disciplinary Committee ("UDC") sanctions
or procedures, and when it found that she failed to allege harm
resulting from Defendants' attempts to deter and outright block
her contact with her daughter when the familial relationship be-
tween Ms. Biron and her daughter, R.B., is constitutionally pro-
tected against government interference, and actual injury need
not be proven for a constitutional violation?

## Statement of Jurisdiction

The District Court had federal question jurisdiction over this matter under 28 U.S.C. § 1331. This Court has jurisdiction over this appeal under 28 U.S.C. § 1291.

## Statement of the Case

On or abour March 19, 2015, Ms. Biron filed Civil Action Number 4:15-CV-205-O, under Bivens v. Six Unknown Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), seeking damages, declaratory judgment, and preliminary and permanent injunctions against Defendants, in their individual and official capacities, for constitutional violations stemming from their interference with her contact with her daughter, R.B., and with her ex-husband, Michael Biron (R.B.'s father), and with Michael Bonczar (Ms. Biron's father and Power of Attorney) ("POA").

On June 16, 2015, the case was dismissed, without serving the Defendants, under the screening provisions of 28 U.S.C. §§ 1915A and 1915(e)(2)(B).

Ms. Biron alleged the following sixteen claims:

1.   On or about June 30, 2014, SIS Officer Wenger intercepted, stopped, and confiscated a letter mailed lawfully by Plaintiff to her daughter, R.B., in violation of the First, Fifth, and Eighth[1] Amendments to the U.S. Constitution.

2.   On or about June 30, 2014, SIS Officer Wenger intercepted, stopped,

---

1 Ms. Biron believes that the psychological pain caused by defendants' acts in blocking all contact with her daughter is, indeed, cruel and unusual punishment, but, recognizing the current state of the law, abandons her her Eighth Amendment Claims.

and confiscated mail mailed by Plaintiff to Plaintiff's POA (and father) Michael Bonczar in violation of the First, Fifth, and Eighth Amendments to the U.S. Constitution.

3.    On or about July 5, 2014, Warden Upton was made aware of this wrongful mail interception and confiscation via detailed email from Plaintiff and failed to act to remedy this wrongful action in violation of the First, Fifth, and Eighth Amendments to the U.S. Constitution.

4.    On or about July 15, 2014, Lauren Cimperman, Psy.D. threatened Plaintiff with placement on a "correctional management plan" ("CMP") for Plaintiff's lawful efforts to contact R.B. in violation of Plaintiff's rights under the First, Fifth, and Eighth Amendments to the U.S. Constitution.

5.    On or about July 31, 2014, DHO Valle sanctioned[2] Plaintiff for the June 30th letter lawfully mailed to R.B. in violation of Plaintiff's First, Fifth, and Eighth Amendment rights under the U.S. Constitution.

6.    On or about October 16, 2014, Warden Upton issued a "Restricted Correspondence Notification" to bar Plaintiff's lawful mail to R.B. in violation of the First, Fifth, and Eighth Amendments to the U.S. Constitution.

7.    On or about November 20, 2014, DHO Valle, on reconsideration of the July 31, 2014 hearing, sanctioned[3] Plaintiff for the June 30th letter lawfully mailed to Michael Bonczar in violation of Plaintiff's

---

2 Plaintiff noted in her Complaint that she was not challenging the DHO sanctions.
3 Plaintiff noted in her Complaint that she was not challenging the DHO sanctions.

First, Fifth, and Eighth Amendment rights under the U.S. Constitution.

8.    On or about November 19, 2014 and on or about November 30, 2014, respectively, SIS Officer Wenger intercepted and stopped two (2) letters mailed lawfully by Plaintiff to Michael Biron (her ex-husband) and told Plaintiff that she could no longer send mail to Michael Biron in violation of the First, Fifth, and Eighth Amendments to the U.S. Constitution.

9.    On or about December 1, 2014 through December 3, 2014, Warden Upton violated Plaintiff's First, Fifth, and Eighth Amendment rights under the U.S. Constitution by failing to intervene and correct the wrongful interference with the two (2) November 2014 mailings to Michael Biron, and directed or allowed staff to block future mailings to Michael Biron by disabling her ability to print Trulincs labels required to send mail.

10.   On or about November 27, 2014, SIS Officer Wenger in concert with Warden Upton blocked phone numbers on Plaintiff's call list and stopped her ability to call Michael Biron and R.B. in violation of the Plaintiff's First, Fifth, and Eighth Amendment rights under the U.S. Constitution.

11.   On or about December 12, 2014, Lauren Cimperman, Psy.D., in concert with SIS Officer Kingsley, unlawfully attempted to impose a "correctional management plan" to bar Plaintiff's contact with R.B. in violation of the First, Fifth, and Eighth Amendments to the U.S. Constitution.[4]

---

[4] Defendants Cimperman and Kingsley did impose the CMP, but Ms. Biron refused the CMP and refused to sign it, noting on the form that the CMP violated her constitutional rights.

12. On January 28, 2015, Lauren Cimperman violated Plaintiff's First, Fifth, and Eighth Amendment rights under the U.S. Constitution by issuing a discipline report against Plaintiff for asking a family member over the phone to find out how R.B. liked a Francine Rivers book she had received for Christmas.

13. On or about February 24, 2015, Lauren Cimperman violated Plaintiff's First, Fifth, and Eighth Amendment rights under the U.S. Constitution by issuing a discipline report against the Plaintiff because Plaintiff asked the family's Pastor (Plaintiff's Pastor of Record) to contact R.B. to see how she was doing.

14. On or about February 26, 2015, Ms. E. Smith-Branton violated Plaintiff's First, Fifth, and Eighth Amendment rights under the U.S. Constitution by finding Plaintiff guilty of the Cimperman-incident report of February 24, 2015 and sanctioning her.

15. On or about February 27, 2015, Ms. W.L. Smithers violated Plaintiff's First, Fifth, and Eighth Amendment rights under the U.S. Constitution by re-sanctioning Plaintiff for the February 24, 2015 Cimperman-incident report.

16. On or about March 12, 2015, Ms. E. Smith-Branton violated Plaintiff's First, Fifth, and Eighth Amendment rights under the U.S. Constitution by sanctioning Plaintiff in connection with the January 28, 2015 Cimperman incident report.

The District Court dismissed all of Ms. Biron's claims as frivolous and for failure to state a claim.

## Summary of the Argument

The Defendants have blocked and interfered with Ms. Biron's contact with her daughter, R.B., and others in violation of the First and Fifth Amendments to the United States Constitution, and the District Court erred in dismissing her claims sua sponte as frivolous and for failure to state a claim.

In dismissing her First Amendment claims, the District Court relied on matters outside of the pleadings: matters from her related habeas action that were unproven and, in fact, false. Specifically, it errantly found that a specific (although unidentified) bar to such contact exists, and that this justification for barring contact was reasonably related to a legitimate penological interest. The Defendants, however, should have been served, the adversarial process allowed to proceed, and the issue adjudicated under the standard for summary judgment.

The Defendants have violated Ms. Biron's Fifth Amendment due process right to be free from government interference with her familial relationship with her daughter, R.B.

The District Court dismissed Ms. Biron's Fifth Amendment claims as Heck-barred, for non-exhaustion of administrative remedies, and for failure to allege harm. Ms. Biron, however, does not challenge her prison disciplinary convictions or loss of good-conduct time, and judgment in her favor will not invalidate a conviction or change the length of her sentence. Therefore, her claims are not barred by Heck. In addition, because she is not challenging the DHO conviction[6] ex-

---

6 This DHO conviction is appropriately challenged in Ms. Biron's habeas petition.

haustion of the administrative appeal is irrelevant.

Finally, the District Court found that Ms. Biron did not allege any harm caused by Defendants' attempts and threats to impose a CMP to deter her lawful contact with R.B.  It is not necessary, however, for a plaintiff to prove actual injury for a constitutional violation to recover nominal and punitive damages.  Nevertheless, Ms. Biron's harm was apparent:  she was forbidden from contacting her daughter, and when she did, she was disciplined and sanctioned for violating the CMP.

## Standard of Review

When, as in Ms. Biron's case, a district court dismisses a complaint as both frivolous (28 U.S.C. § 1915(e)(2)(B)(i)), and for failure to state a claim (28 U.S.C. § 1915A & § 1915(e)(2)(B)(ii)), this Court reviews the decision de novo.  See Samford v. Dretke, 562 F.3d 674, 678 (5th Cir. 2009).  This is the same standard used to review a dismissal under Federal Rule of Civil Procedure 12(b)(6).  Bradley v. Puckett, 157 F.3d 1022, 1025 (5th Cir. 1998).

## Argument

Under the de novo standard, "a complaint fails to state a claim upon which relief may be granted when it does not contain 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  Rogers v. Boatright, 709 F.3d 403, 407 (5th Cir. 2013) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

Generally, when reviewing a dismissal for failure to state a claim, the Court accepts as true all well-pleaded facts and views such facts in the light most favorable to the plaintiff.  Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 338 (5th Cir. 2008).

7

When deciding a motion to dismiss, federal courts may refer to matters outside the pleadings, such as pleadings from a separate action, only if the court does not rely on those matters when deciding the motion. Davis v. Bayless, 70 F.3d 367, 372 n.3 (5th Cir. 1995) (citing Cinel v. Connick, 15 F.3d 1338, 1343 n.6 (5th Cir. 1995)). If, however, the district court does rely on matters outside the pleadings, it "should . . . convert[] the motion to dismiss into a motion for summary judgment, give[] the parties notice, and then consider[] all of the evidence presented." Scanlan v. Tex. A & M Univ., 343 F.3d 533, 539 (5th Cir. 2003).

I.   Ms. Biron has stated a First Amendment claim

The District Court erred in finding, at the screening stage, that Ms. Biron's First Amendment claims could not pass the test promulgated in Turner v. Safely, 482 U.S. 78 (1987).

In Turner, the Supreme Court held that, as a general matter, a prison regulation or practice which directly impinges upon a prisoner's constitutional rights, including First Amendment rights, was valid as long as the regulation or practice was "'reasonably related to a legitimate penological interest.'" Brewer v. Wilkinson, 3 F.3d 816, 824 (5th Cir. 1993) (quoting Turner, 482 U.S. at 89). Although the burden of persuasion is on the inmate to disprove the validity of the regulation or practice, "prison officials must still articulate their legitimate governmental interest" for their actions and "provide some evidence supporting their concern." Riker v. Lemmon, 798 F.3d 546, ___ (7th Cir. 2015) (holding that prison administrator's justifications for the ban on former prison guard marrying an inmate were insufficient

(at the summary judgment stage) to support the legitimate interest
of security and institutional order).  The Eleventh Circuit has noted
that "[b]ecause, at the § 1915A preliminary-screening stage, the def-
endants have not yet been served with and responded to [the plaint-
iff's] allegations, we do not know what justifications they may pro-
vide for these alleged actions."  Johnson v. Brown, 581 Fed. App'x
777, 781 (11th Cir. 2014) (plaintiff-inmate alleged practice of re-
ligion was infringed) (unpublished).

In the present case, the un-served Defendants never had the chance
to proffer any justification for their bar to contact.  Instead, the
District Court made up its own "facts" out of whole cloth to find that
the Defendants had a legitimate penological interest in blocking all
of Ms. Biron's contact with her daughter and ex-husband.  In making
its case, the District Court cited to several Fifth Circuit cases that
upheld contact restrictions when "victims" and others affirmatively
requested no contact with a particular inmate.  (Order at 7-8).  The
District Court explained that protection from unwanted contact by an
inmate is a legitimate penological interest.  (Order at 8).  Although
this is a correct statement of the law, there is not a scintilla of
such evidence in this case or the habeas case.  Nevertheless, the
District Court went on to make the baseless assertion that, in Ms.
Biron's case, "[t]here is an explicit bar to such contact."( Id.)

There is no evidence, however, that R.B. or Michael Biron affirm-
atively requested that the Defendants block contact with Ms. Biron.
And the District Court neglected to identify what "explicit bar" it
was referring to.  To the extent it relied on matters outside of the

instant pleading, this was error.  See Davis, 70 F.3d at 372 n.3
(citing Cinel, 15 F.3d at 1343 n.6).

And the District Court clearly stated that it did, indeed, rely
on such matters.  It stated, "this Court was provided with sufficient
information in resolving [Ms. Biron's] underlying petition for writ
of habeas corpus to know that there was a rational basis for the im-
plementation of the restrictions on her contact with her daughter."
(Order at 8.)  Thus, the Defendants should have been served, and the
issue resolved under the standard for summary judgment.  See Scanlan,
343 F.3d at 539.

Further, even if reliance on the habeas case were appropriate,
the habeas court made no finding whatsoever that there was an expli-
cit bar to contact.  Only one (1) of the four (4) challenged disciplin-
ary convictions was adjudicated on the merits and adjudication did not
require a finding on this issue.[5]

Certainly, the magistrate's pre-trial detention order is not
what the District Court considered an explicit bar to contact.  And
the language from the closed Manchester Family Division December 2012
review hearing order was not found to be an explicit bar to contact.
Indeed, part of the language in this order, that was quoted by the
District Court below, was wording from State bail conditions from a
case that was nolle prossed in November 2012.  (Order at 1.)

In fact, there is no bar to contact and, therefore, no justifi-
cation that would support a legitimate penological interest in the

---

5 The appeal of the denial and dismissal of the habeas petition is pre-
sently before this Honorable Court.  See Biron v. Upton, No. 15-10607.

government imposed contact restrictions. <u>Turner</u> is, therefore, not satisfied in the Defendants' favor, and the District Court erred in dismissing Ms. Biron's First Amendment claims.

II. <u>Ms. Biron has a Fifth Amendment Due Process right against government interference with her familial relationship between her and her daughter</u>

The District Court erred in dismissing Ms. Biron's Fifth Amendment claims as frivolous and for failure to state a claim.

The Fifth Amendment "guarentees more that fair process." <u>Troxel v. Granville</u>, 147 L. Ed. 2d 49, 56, 530 U.S. 57, ____ (2000) (quoting <u>Washington v. Glucksberg</u>, 521 U.S. 702, 719 (1997)). "The Clause also includes a substantive component that 'provides heightened protection against government interference with certain fundamental rights and liberty interests.'" <u>Troxel</u>, 147 L. Ed. 2d at 56 (quoting <u>Washington</u>, 521 U.S. at 720). "[The Supreme Court has] recognized on numerous occasions that the relationship between parent and child is constitutionally protected." <u>Troxel</u>, 147 L. Ed. 2d at 57 (quoting <u>Quilloin v. Walcott</u>, 434 U.S. 246, 255 (1978)).

Ms. Biron's claims of Fifth Amendment substantive and procedural due process violations were mischaracterized and misconstrued by the District Court as complaints about the prison grievance process and a challenge to disciplinary proceedings. Ms. Biron, however, brings this claim based on the Defendants' unconstitutional interference with the constitutionally protected relationship between her and her daughter. See <u>id.</u>

A. Sufficient Harm Was Alleged

Further, the District Court found that Ms. Biron did not allege

any harm caused by the imposition and the threat of imposition of the CMP by Defendants Cimperman and Kingsley.[6]

"[T]he law[, however,] is well established in this Circuit that plaintiffs may recover nominal damages when their constitutional rights have been violated but they are unable to prove actual injury . . . [and j]ust as nominal damages are allowed without proof of injury, 'a punitive award may stand in the absence of actual damages where there has been a constitutional violation.'" Brown v. Sudduth, 255 Fed. App'x 803, 808 (5th Cir. 2007) (quoting Williams v. Kaufman County,

Regardless, the harm in this case was forbidding Ms. Biron from contacting her daughter by threatening and, in fact, imposing disciplinary sanctions against her for doing so.

B.  Heck And Non-Exhaustion Do Not Bar The Claims

None of Ms. Biron's claims are barred by Heck, because a successful judgment will not effect the length of her sentence.

"A prisoner cannot, in a [civil rights] action, challenge the fact or duration of [her] confinement or recover good-time credits lost in a prison disciplinary proceeding." Clarke v. Stalder, 154 F.3d 186, 189 (5th Cir. 1998) (citing Preiser v. Rodriguez, 411 U.S. 475, 487 (1973). In Heck v. Humphrey, 512 U.S. 477, 486-87 (1994), the Supreme Court has held that an inmate cannot bring a civil rights action for damages (rather than for the recovery of good-time credits) if a favorable judgment would necessarily imply the invalidity of the

---

6 Plaintiff alleged Defendants "attempted to" and "threatened" to impose the CMP because Plaintiff did not acknowledge and refused to sign the document. Nevertheless, the CMP was indeed imposed on her because she was disciplined for violating it.

inmate's conviction or the duration of his sentence, unless the inmate
can prove the "conviction" has been invalidated. "A 'conviction',
for pupposes of Heck, includes a ruling in a prison disciplinary pro-
ceeding that results in a change to the prisoner's sentence, includ-
ing loss of good-time credits." Clarke, 154 F.3d at 189 (emphasis
added).

In the present case, the claims involving the June 30, 2014 inter-
cepted letters to R.B. and Michael Bonczar are not Heck-barred because
the DHO conviction will be uneffected by a finding that Defendants
have unconstitutionally blocked Ms. Biron's contact with her family.
See Heck, 512 U.S. at 481. Although the original July 2014 "conviction"
was for violating an alleged (and non-existent) no-contact order,
this conviction was invalidated by the November 2014 reconsideration
hearing that ultimately changed the conviction to a conviction for
circumvention of mail monitoring via third-party mail. Clearly, an
inmate can be convicted of circumvention of mail monitoring without a
contact restriction in place. For instance, having someone take a
letter out of the prison to mail it is circumvention of mail monitor-
ing whether or not there is a bar to contacting the recipient.

Likewise, Heck does not bar Ms. Biron's claims regarding Defend-
ants' unconstitutional actions that culminated in two (2) UDC proc-
eedings and sanctions. The UDC actions did not (and cannot) result
in the loss of good-time credits, and, therefore, are not "convictions"
for purposes of Heck. See Clarke, 154 F.3d at 189.

Finally, the District found that Ms. Biron did not exhaust her
administrative remedies in regard to the July 2014 DHO convictions.
Ms. Biron, however, did not challenge the DHO sanctions or procedures
in this civil rights action. The DHO actions are properly challenged

in her habeas petition.

## III. Conclusion

The District Court erred in dismissing Ms. Biron's <u>Bivens</u> action.
She requests this Honorable Court refund the fees paid for this appeal,
and reverse and remand (with instructions) for further proceedings.

Respectfully submitted,

12/30/15
**Date**

*Lisa Biron*

Lisa Biron, Esq.
Reg. # 12775-049
FMC Carswell
P.O. Box 27137
Fort Worth, TX 76127

### Certification of Compliance With Rule 32(a)

This brief complies with the page limitation and word limitation
of Rule 32(a) and does not exceed 30 pages or 14,000 words.

*Lisa Biron*

Lisa Biron

### Certification of Timely Filing

I hereby declare, under penalty of perjury, that four (4) copies
of this brief were mailed U.S. Firstclass postage prepaid to the Fifth
Circuit Court of Appeals by depositing said documents in the inmate
legal mail system on this date.

12/30/15
**Date**

*Lisa Biron*

Lisa Biron

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

LISA BIRON,                          §
(BOP No. 12775-049)                  §
V.                                   §          CIVIL ACTION NO. 4:15-CV-205-O
                                     §
JODY UPTON, Warden,                  §
FMC-Carswell, et al.                 §

## ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER OF DISMISSAL UNDER 28 U.S.C. §§ 1915A(B) and 1915(e)(2)(B)

This case is before the Court for review of pro se inmate and Plaintiff Lisa Biron's case under the screening provisions of 28 U.S.C. §§ 1915A and 1915(e)(2)(B). Having considered the motion, the Court finds that it should be and is hereby **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

## I.    BACKGROUND

Biron, an inmate at the Bureau of Prisons' FMC-Carswell facility, filed a civil complaint. Biron was previously before this Court with a consolidated petition for writ of habeas corpus under 28 U.S.C. § 2241 challenging several disciplinary proceedings, including a disciplinary proceeding arising from some of the incidents which are the basis of this civil action. *Biron v. Upton*, No. 4:14-CV-772-O (consolidated with No. 4:14-CV-823-O). Because Biron's claims in this case are intertwined with the Court's resolution of some of the claims in the habeas case, the Court finds it appropriate to restate the background facts set forth in that case:

> [Biron] was charged in the United States District Court for the District of New Hampshire with transportation of a minor with intent to engage in criminal sexual activity, sexual exploitation of children, and possession of child pornography. Resp't's App., No. 4:14-CV-823-O, at 6, ECF No. 19. All charges involved her minor daughter, R. B. On December 4, 2012, before the criminal trial, the 9th Circuit-Family Division Court of Manchester, New Hampshire, ordered that Petitioner "shall not contact or attempt to contact R. B. either directly or indirectly" and "shall have no contact with R. B. including third party contact except that as may be deemed

appropriate by and monitored by DCYF."[1]  *Id.* at 6, 12.  Also, on January 3, 2013, before the criminal trial, the convicting court, as an addendum to its detention order, ordered that Petitioner "shall have no contact (either direct or indirect) with the minor victim between now and the resolution of this case."  *Id.* at 21.  Following her convictions, Petitioner appealed, but, on November 14, 2014, the First Circuit affirmed the judgment of the convicting court, and, on March 23, 2015, the Supreme Court denied a petition for writ of certiorari. *Id.* at 78; Order, *Biron v. United States,* 135 S. Ct. 1576 (2015).  Petitioner continues to serve her combined 480-month term of imprisonment.[2]

In this lawsuit, Plaintiff Biron names as defendants several individuals at FMC Carswell, including: Warden Jody Upton; Disciplinary Hearing Officer Valle; Lauren Cimperman, correctional officer; Ms. Wenger and Ms. Kingsley, special investigative services officers; and Ms. W.L. Smithers and Ms. E. Smith-Branton, members of the Unit Disciplinary Committee at FMC Carswell. Compl. 2, ECF No. 1.

The complaint recites several events that resulted in disciplinary charges and sanctions imposed upon Biron by FMC-Carswell officials.  First, Biron complains that she received a disciplinary charge as a result of attempting to mail a letter dated June 29, 2014 to her daughter R.B., and to her power of attorney. *Id.* at 2-3 ¶¶ 12-14, 16.  The letter was intercepted by Officer Wenger and not delivered. *Id.* at 2-3 ¶¶ 12-13. Plaintiff complains that Warden Upton was aware of this mail confiscation and failed to take any remedial measures. *Id.* at 3 ¶ 14. Plaintiff Biron did receive a disciplinary charge for the letter, and was, after a July 31, 2014 hearing, found guilty by Disciplinary Hearing Officer Valle of the charge of "Use of Mail for Abuses other than Criminal Activity which Circumvent Mail Monitoring Procedures." *Id.* at 3 ¶ 16; *see Biron v. Upton,* No.4:14-CV-772-O

---

[1] "DCYF" stands for the Division for Children, Youth and Families of the State of New Hampshire's Department of Health and Human Services according to the Department's website.

[2] To the extent necessary, the Court takes judicial notice of the records of this the Fort Worth division in *Biron v. Upton,* No.4:14-CV-772-O (Consolidated with No.4:14-CV-823-O).

(consolidated with No.4:14-CV-823-O) ECF No. 7, at 5-6, 29-39, 45-47.) Plaintiff Biron alleges that

Defendant Valle, on reconsideration of the July 31, 2014 hearing, again sanctioned her. Compl. 3

¶ 16, ECF No. 1. As this Court recounted in the recent habeas corpus case, this particular disciplinary

proceeding resulted in loss of various privileges and loss of good time credits. *Biron v. Upton*, No.

4:14-CV-772-O at *47, ECF No. 7 (consolidated with No. 4:14-CV-823-O).

Biron also complains of a second event that resulted in a disciplinary charge. In this regard,

Biron alleges that on January 28, 2015, Defendant Cimperman issued a disciplinary report against

her for "Asking a family member over the phone to find out how R.B. liked a Francine Rivers book

she had received for Christmas." Compl. 4 ¶ 23, ECF No. 1. Plaintiff alleges that this event resulted

in her receiving a disciplinary violation and sanctions on March 12, 2015. *Id.* at 5 ¶ 27.

Plaintiff Biron also recites another event resulting in a disciplinary proceeding and charge.

She alleges that on February 24, 2015, Defendant Cimperman issued another disciplinary report

against her because "plaintiff asked the family's Pastor (Plaintiff's Pastor of Record) to contact R.B.

to see how she was doing." *Id.* at 5 ¶ 24. Plaintiff then recites that this too, resulted in her being found

guilty of another disciplinary violation and sanctions on February 26 and 27, 2015. *Id.* at 5 ¶ 25-26.

In addition to her allegations of these events that resulted in three disciplinary proceedings,

Biron makes additional allegations. She contends that Defendant Cimperman "threatened Plaintiff

with placement on a "correctional management plan" for Plaintiff's "lawful efforts to contact R.B.

. . . ." *Id.* at 3 ¶ 15. She also alleges that on October 16, 2014, Warden Upton issued a "Restricted

Correspondence Notification" to "bar Plaintiff's lawful mail to R.B. . . ." *Id.* at 3 ¶ 17. Plaintiff Biron

also complains that on November 19 and 30, 2014, Officer Wenger intercepted two letters to her ex-

husband, Michael Biron. *Id.* at 4 ¶ 19. She alleges that Warden Upton again failed to intervene and

correct the "wrongful" interference with the letters, and allowed staff to disable her ability to print

labels required to send mail. *Id.* at 4 ¶ 20. She also alleges that as a result, Officer Wenger acted in concert with Warden Upton, by blocking her ability to make phone calls to Michael Biron and R.B.. *Id.* at 4 ¶ 21. And, Plaintiff also contends again that in December 2014, Defendants Cimperman and Kingsley unlawfully attempted to impose a "correctional management plan" to bar her contact with R.B. *Id.* at 4 ¶ 22.

As to each of her allegations, Plaintiff writes that she sustained violations of the "First, Fifth, and Eighth Amendments to the Constitution." Plaintiff seeks nominal and punitive damages from Defendants Upton, Cimperman, and Valle, and she seeks a preliminary and permanent injunction "ordering defendants to cease interfering with Plaintiff's association and communication to her daughter R.B. and the others named . . . ." *Id.* at 6. She also requests a transfer back to another region. Plaintiff has also filed a motion for temporary restraining order.

## II.     LEGAL STANDARD

A complaint filed in forma pauperis that lacks an arguable basis in law should be dismissed under 28 U.S.C. § 1915. *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). Under 28 U.S.C. § 1915(e)(2)(B), a district court retains broad discretion in determining at any time whether an in-forma-pauperis claim should be dismissed. *See* 28 U.S.C.A. § 1915(e)(2) (West 2006); *see Adepegba v. Hammons*, 103 F.3d 383, 388 (5th Cir. 1996). Section 28 U.S.C. § 1915(e) *requires* dismissal not only when an allegation of poverty is untrue or the action is frivolous or malicious, but also when "the action . . . fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C.A. § 1915(e)(2)(A) and (B) (West 2006). Furthermore, as a part of the PLRA, Congress enacted 28 U.S.C. § 1915A, which requires the Court to review a complaint from a prisoner seeking relief from a governmental entity or governmental officer or employee as soon as possible after docketing. *See* 28 U.S.C.A. § 1915A(a) (West 2006).

Consistent with § 1915A is prior case law recognizing that a district court is not required to await a responsive pleading to conduct its § 1915 inquiry. *See Schultea v. Wood*, 47 F.3d 1427, 1434 (5th Cir. 1995). Rather, § 1915 gives judges the power to "dismiss a claim based on an indisputably meritless legal theory." *Id.* (citing *Neitzke*, 490 U.S. at 327.) After review of the Complaint under these standards, the Court concludes that all Biron's claims must be dismissed.

## III. ANALYSIS

Plaintiff seeks relief under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics ("Bivens")*, 403 U.S. 388, 297 (1971), the Supreme Court case recognizing an individual's right to seek recovery for violation of constitutional rights by a person acting under color of federal law. The *Bivens* decision is the counterpart to 42 U.S.C. § 1983, and extends the protections afforded under § 1983 to parties injured by federal actors. *See Evans v. Ball*, 168 F.3d 856, 863 n.10 (5th Cir. 1999) ("A *Bivens* action is analogous to an action under § 1983--the only difference being that § 1983 applies to constitutional violations by state, rather than federal officials."), *overruled on other grounds, Castellano v. Fragozo*, 352 F.3d 939, 948-49 & n.36 (5th Cir. 2003). Biron has named the defendants in both an individual and official capacity. But official-capacity claims for money damages based upon allegations of constitutional violations are barred because they are considered suits against the United States, which has not waived its sovereign immunity for such claims. *See Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985); *see also Marsden v. Fed. Bureau of Prisons*, 856 F. Supp. 832, 835 (S.D.N.Y. 1994) (claims for money damages against individual federal defendants in an official capacity must be dismissed for lack of subject matter jurisdiction); *Pollack v. Meese*, 737 F.Supp. 663 (D.D.C. 1990) ("[A] Bivens action may be maintained against a defendant only in his or her individual capacity, and not in his or her official capacity.") (citation omitted).

Thus, a *Bivens* action cannot be maintained "against the United States, the BOP, or BOP officers in their official capacities because such a claim is barred by the doctrine of sovereign immunity." *Gibson v. Fed. Bureau of Prisons*, 121 F. App'x. 549, 551 (5th Cir. 2004) (citing *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 71-72 (2001); *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Consequently, all Biron's *Bivens* claims against the individual defendants in an official capacity must be dismissed.[3]

### A.    Eighth Amendment

Plaintiff recites that each of her allegations amount to a violation of the Eighth Amendment's ban against cruel and unusual punishment. The Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to provide "humane conditions of confinement," ensuring that "inmates receive adequate food, clothing, shelter, and medical care . . . ." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Supreme Court has held, however, that "to the extent prison conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 346-47 (1981). Confinement that amounts to cruel and unusual punishment includes wanton and unnecessary infliction of pain, conditions grossly disproportionate to the severity of the crime warranting imprisonment, and the deprivation of the minimal civilized measures of life's necessities. *Wilson v. Lynaugh*, 878 F.2d 846, 848 (5th Cir. 1989) (citing *Rhodes*, 452 U.S. at 346-47). Biron's claims challenging the restrictions on her ability to contact her daughter and other persons, and the disciplinary and other correctional

---

[3] Sovereign immunity is not a bar to claims for injunctive relief. *See generally Simmat v. U. S. Bureau of Prisons*, 413 F.3d 1225, 1233 (10th Cir. 2005) ("Sovereign immunity is . . . not a bar to [a prisoner's] action for injunctive relief."); *Newsome v. Vanderbilt Univ.*, 653 F.2d 1100, 1107 (6th Cir. 1981) ("An action seeking relief other than money damages and stating a claim that the agency acted or failed to act in official capacity shall not be dismissed because it is against the United States."). To the extent Biron asserts claims for injunctive relief against the individual defendants in an official capacity, such claims are barred for the same reasons noted *infra* at pages 9-11.

measures taken towards her resulting from her failure to accept those restrictions, do not amount to "wanton and unnecessary infliction of pain" or the deprivation of a "minimal civilized measure of life's necessities." Biron's loss of privileges and loss of good conduct time do not amount to cruel and unusual punishment under the Eight Amendment. As such, all Biron's claims of an Eighth Amendment violation fail to state a claim.

### B.    First Amendment

Biron also alleges that each of her recited factual events amounted to a violation of her First Amendment rights. The United States Supreme Court has made it clear that prisoners retain those First Amendment rights of speech which are "'not inconsistent with [their] status as . . . prisoner[s] or with the legitimate penological objectives of the corrections system.'" *Hudson v. Palmer*, 468 U.S. 517, 523 (1984) (quoting *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). In determining the constitutional validity of prison practices that impinge upon a prisoner's rights with respect to mail, the appropriate inquiry is whether the practice is reasonably related to a legitimate penological interest. *Brewer v. Wilkinson*, 3 F.3d 816, 824 (5th Cir. 1993); *see also Jackson v. Cain*, 864 F.2d 1235, 1248 (5th Cir. 1989) (noting that when the court deals with a challenge to an action taken by prison officials rather than a challenge to a regulation, the reasonable relationship standard is applicable to determine whether that action was constitutionally permissible). Prison officials may place restraints on the exchange of non-legal mail between prisoners and outside persons and between prisoners within the prison so long as the restraint is related to a legitimate governmental interest. *See Brewer v. Wilkinson*, at 825 (citing *Turner v. Safley*, 482 U.S. 78, 87-89 (1987) and *Thornburgh v. Abbott*, 490 U.S. 401, 413-14 (1989)). Furthermore, the United States Court of Appeals for the

Fifth Circuit has upheld particular restrictions limiting an inmate's right to make contact with a crime victim who has requested no contact. *See Samford v. Dretke,* 562 F.3d 674, 678-82 (5th Cir. 2009) (employing the *Turner* factors to reject inmate's First Amendment challenge to restricting contact with his two minor sons, who had been witnesses to his brandishing of a gun and threatening to kill their mother); *Jones v. Diamond*, 594 F.2d 997, 1014 (5th Cir. 1979) (validating the use of negative mail lists and stating "jail officials may employ a 'negative mail list' to eliminate any prisoner correspondence with those on the outside who affirmatively indicate that they do not wish to receive correspondence from a particular prisoner"); *Guajardo v. Estelle*, 580 F.2d 748, 753 (5th Cir. 1978) (affirming the district court's determination that a negative mail list does not violate prisoners' First Amendment rights and stating that such lists "permit [prison officials] to deny inmates permission to correspond with persons who have objected to further correspondence").

In the instant case, although Plaintiff disagrees with the decision not to allow her to have contact with her daughter and contacts with others in effort to make contact with her daughter, this Court was provided with sufficient information in resolving her underlying petition for writ of habeas corpus to know that there was a rational basis for the implementation of the restrictions on her contact with her daughter. There is an explicit bar to such contact. As noted in *Samford v. Dretke,* "prisons have legitimate interest in protecting crime victims and their families from the unwanted communication that the prisoners when a victim requests that the prison prevent such communication." *Samford*, 562 F.3d at 680 (citing *Berdella v. Delo*, 972 F.2d 204, 209 (8th Cir. 1992)) ("[T]he government's interest in protecting the public from harassment by inmates would justify prohibiting an inmate from sending mail to persons who have affirmatively requested that

mail not be received from an inmate.") (citation omitted). As the restrictions on mail and telephone contact with victim daughter R. B. and her husband were employed in support of a legitimate penological interest, Biron has not stated a violation of her First Amendment rights.

### C.    Fifth Amendment

Other than her claim that her right to due process of law under the Fifth Amendment was violated in relation to the three disciplinary proceedings, which is addressed in the *Exhaustion* and *Heck v. Humphrey* sections below, Biron also recites that officers Cimperman and Kingsley violated her Fifth Amendment rights by "threatening" and separately "attempting" to impose a "correctional management plan" upon Plaintiff.   But these allegations do not actually recite any harm resulting to Biron, and thus fail to state any Fifth Amendment violation.   Furthermore, Biron alleges that Warden Upton violated her rights under the Fifth Amendment by failing to "intervene" to correct the contact restrictions imposed upon her after she brought complaints to his attention. To the extent this is an allegation of a denial in the processing of a grievance, such claim does not support a constitutional violation. As the Court of Appeals for the Fifth Circuit found in *Geiger v. Jowers*: "[An inmate] does not have a federally protected liberty interest in having these grievances resolved to his satisfaction. As he relies on a legally nonexistent interest, any alleged due-process violation arising from the alleged failure to investigate his grievances is indisputably meritless." *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005); *see also Jenkins v. Henslee*, No. 3-01-CV-1996-R, 2002 WL 432948, at *2 (N.D. Tex. Mar. 15, 2002) ("An inmate does not have a constitutional entitlement to a grievance procedure. Hence any alleged violation of the grievance procedure does not amount to a constitutional violation.") (citing *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994), *cert. denied*, 514 U.S. 1022 (1995); *Antonelli v. Sheahan*, 81 F.3d 1422 (7th Cir. 1996)). Thus, Plaintiff's claims of violation of her rights under the Fifth Amendment, arising from events other than the

-9-

disciplinary proceedings, must be dismissed.

### 1.    *Exhaustion*

As noted above, Biron's claims arising from the June 2014 intercepted letters were previously the basis for a petition for writ of habeas corpus under 28 U.S.C. § 2241 arising from the same events made the basis of this suit. In that case, the Court held that Biron's challenges to disciplinary case number 2602170 arising from the June 2014 letter were dismissed because Biron failed to exhaust the requisite administrative remedies before initiating suit. *Biron v. Upton,* No. 14-CV-772-O (Consolidated with No. 4:14-CV-823-O) (Mem. Op. & Order, June 9, 2015, ECF No. 16.). In *Jones v. Bock,* 549 U.S. 199 (2007), the Supreme Court reaffirmed that "exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones,* 549 U.S. at 21. *Jones* held that exhaustion is an affirmative defense, and subsequent Fifth Circuit cases have held that screening procedures may not be used to resolve the exhaustion question before a responsive pleading is filed. *See Jones,* 549 U.S. at 212; *Torns v. Miss. Dep't of Corr.,* 301 F. App'x (5th Cir. 2008) (citing *Carbe v. Lappin,* 492 F.3d 325, 328 (5th Cir. 2007)). In this case however, the Court has the benefit of its own review of the exhaustion issues in case number 4:14-CV-772-O (No. 4:14-CV-823-O). Thus, because the Court can rely on this proof that Biron had not exhausted her claims related to the disciplinary proceeding arising from the June 2014 letter, and because Biron has not shown in her Complaint that she has subsequently exhausted this claim, the Court concludes that all claims arising from the interception of the June 2014 letter and subsequent disciplinary proceeding and sanction must be dismissed for lack of exhaustion.

### 2.    *Heck v. Humphrey*

The Court alternatively concludes that, as to all claims arising from the June 2014 letter interception and resulting disciplinary proceeding, and as to the other two events resulting in

disciplinary proceedings, Biron's claims are not cognizable in this suit under *Bivens*. Plaintiff seeks injunctive relief and monetary damages from the other Defendants based upon challenges to the disciplinary proceedings resulting in her disciplinary sanctions and imposition of loss of good-time credit and loss of other privileges. In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that a claim that, in effect, attacks the constitutionality of a conviction or imprisonment is not cognizable under 42 U.S.C. § 1983 and does not accrue until that conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486-87, The Supreme Court has extended *Heck* to prison disciplinary proceedings, concluding that claims for declaratory relief or monetary damages that necessarily imply the invalidity of a disciplinary punishment are not cognizable in a 42 U.S.C. § 1983 proceeding. *See Edwards v. Balisok*, 520 U.S. 641, 646-48 (1997); *Clarke v. Stadler*, 154 F.3d 186, 190-91 (5th Cir. 1998) (en banc) (holding that a claim for prospective injunctive relief that would imply the invalidity of a prisoner's conviction may be dismissed without prejudice subject to the rule of *Heck v. Humphrey*).

Plaintiff's request to have this Court reconsider the basis and validity of the disciplinary charges and the actions of the officials involved with the investigation, charge, disciplinary proceedings and resulting sanctions, if successful, would necessarily imply the invalidity of the disciplinary convictions. Thus, such claims are not cognizable in this case under *Bivens* unless Plaintiff has satisfied the conditions set forth in *Heck*. *See generally Stephenson v. Reno*, 28 F.3d 26, 27-28 (5th Cir. 1994) (A federal prisoner's *Bivens* action is subject to the rule enunciated in *Heck*). Biron has not shown that she has obtained any such order, and her effort to obtain relief against one of the disciplinary proceedings through a petition for writ of habeas corpus was

dismissed. As a result, Plaintiff's claims raising constitutional challenges to the events resulting in three separate disciplinary proceedings are not cognizable, and must be dismissed. *See Heck,* 512 U.S. at 487-88.

### D.    Transfer

Biron also seeks to be transferred back to the Northeast Region. It is well settled that a prisoner does not have a constitutional right to serve a sentence in any particular institution, or to be transferred or not transferred from one facility to another. *See Olim v. Wakinekona,* 461 U.S. 238, 249-50 (1983); *Tighe v. Wall,* 100 F.3d 41, 42 (5th Cir. 1996). The Bureau of Prisons has "sole discretion" to determine where a federal inmate will be housed. *United States v. Williams,* 65 F.3d 301, 307 (2d Cir. 1995). Because the transfer of a federal inmate to another correctional institution does not implicate a constitutional interest, Biron is not entitled to the requested relief.

### E.    TRO Motion

Plaintiff also filed a motion for a temporary restraining order. Under Federal Rule of Civil Procedure 65(b), a temporary restraining order may be granted only if it clearly appears from specific facts shown by affidavit or verified complaint that immediate and irreparable injury, loss, or damage will result. Fed. R. Civ. P. 65(b)(1)(A). For the reasons recited above, Biron has not satisfied this precondition to the grant of a TRO, and her motion for such relief must be denied.

## IV.    CONCLUSION

Based on the foregoing, it is **ORDERED** that Biron's June 3, 2015 Motion for a Temporary Restraining Order (ECF No. 12) is **DENIED.**

It is **FURTHER ORDERED** that all of Plaintiff's claims for monetary damages against the Individual Defendants in their official capacities, all claims under the First Amendment, all claims under the Eighth Amendment, and all claims under the Fifth Amendment arising from events other

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| LISA A. BIRON, | § | |
| (BOP No. 12775-049) | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:15-CV-205-O |
| | § | |
| JODY UPTON, Warden, | § | |
| FMC-Carswell, et al. | § | |

## FINAL JUDGMENT

In accordance with the Order issued this same day and with Federal Rule of Civil Procedure 58, it is **ORDERED, ADJUDGED,** and **DECREED** that all of Plaintiff's claims for monetary damages against Defendants in their official capacity, all claims under the First Amendment, all claims under the Eighth Amendment, and all claims under the Fifth Amendment arising from events other than the events resulting in disciplinary proceedings, are **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915A(b)(1) and 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

It is further **ORDERED, ADJUDGED,** and **DECREED** that all of Plaintiff's claims arising from the June 2014 letter and resulting disciplinary proceeding are **DISMISSED WITH PREJUDICE** for failure to exhaust; and such claims, alternatively, and all remaining claims, are **DISMISSED WITH PREJUDICE** to their being asserted again until the *Heck v. Humphrey* conditions are met,[1] under 28 U.S.C. § 1915A(b)(1) and 28 U.S.C. § 1915(e)(2)(B)(i) and (ii). All costs of court are taxed against the party who incurred them.

**SO ORDERED** this **16th day** of **June, 2015.**

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

---

[1] *See Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996).





Lisa Biron
18175-049
FMC Carswell
P.O. Box 27137
Fort Worth, TX 76127

⟨⟩12775-049⟨⟩
Fifth Circuit Ct Appeals
Clerk of the Court
600 S Maestri Pl
NEW Orleans, LA 70130-3408
United States